

# NUMBER 13-12-00489-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BROWNSVILLE INDEPENDENT
SCHOOL DISTRICT**                                                      **Appellant,**

**v.**

**MICHAEL A. ALEX,**                                                      **Appellee.**

---

**On appeal from the 138th District Court
of Cameron County, Texas.**

---

# OPINION

**Before Justices Garza, Benavides, and Perkes
Opinion by Justice Perkes**

Appellant Brownsville Independent School District ("BISD") filed this interlocutory

appeal to challenge the trial court's order denying its plea to the jurisdiction.[1]   BISD

---

[1]   Texas Civil Practice and Remedies Code section 51.014(a)(8) provides a right of interlocutory appeal from a district court's order that "grants or denies a plea to the jurisdiction by a governmental unit." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2008).

argues that appellee Michael A. Alex failed to exhaust his administrative remedies, and therefore the trial court lacked subject-matter jurisdiction over certain claims. We reverse and render.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Alex is a former BISD employee.[2] On March 12, 2010, Alex filed a complaint with the Texas Workforce Commission (hereinafter, the "Commission") alleging that because of his race, BISD refused to hire him in October 2009 for a position at the Early College High School. In its entirety, Alex, who is African American, made the following factual complaint to the Commission:

> My name is Michael Alex and I hold a Master of Science Degree in Health and Physical Education from Northeast Louisiana University in Monroe, Louisiana, a Bachelor of Science Degree in Physical Education from the University of Texas-Pan America[n], and an Associate['s] Degree in Physical Education from San Jacinto College in Pasadena, Texas. I have also obtained 15 graduate hours in Educational Administration from the University of Texas at Brownsville. Furthermore, I am a certified teacher in Texas.
>
> I was previously employed as a teacher/coach with Porter High School from 1987 to 1995. I was dismissed from my position due to a false accusation. I was subsequently, tried in a court of law based on the false accusations and was acquitted and found not guilty on October 20, 1995.

---

[2] As Alex acknowledges, from 1987 to 1995, BISD employed Alex as a high-school coach and physical-education teacher. At oral argument in this case, BISD's counsel (1) stated BISD terminated Alex for bringing a sex manual to school and showing it to students and attempting to initiate an inappropriate relationship with a female student; and (2) acknowledged a subsequent criminal trial of Alex resulted in an acquittal. BISD also devotes a portion of its appellate brief to discussion of the circumstances surrounding Alex's prior termination. *See Alex v. Brownsville Indep. Sch. Dist.*, No. 03-97-00276-CV, 1997 WL 759622, at *1 (Tex. App.—Austin Dec. 11, 1997, no pet.) (not designated for publication) (stating Alex's "employment was terminated based on allegations that he had brought a sexually inappropriate book to the school and shared it with students, as well as allegations that Alex attempted to initiate a romantic relationship with a student"). The present case is limited to claims of alleged racial discrimination in hiring and in reaching its decision, this Court considers only information contained in the appellate record.

2

I have reapplied for employment with the BISD on numerous occasions even interviewed for a Health/PE position in early October 2009. The response from BISD is no response. BISD continues to hire other applicants for positions that I have applied for of other races other than African American that I am a class member of. I believe that I am being discriminated against under Chapter 21, et.seq. since BISD refused to hire me, although, I was the best qualified candidate that applied for the position at the Early College High School with BISD and was not selected in early October 2009. Incredibly, BISD has on file an updated application in its Human Resources Department dated January 27, 2010 and [I] have received no contact as to any positions for interview, although BISD is the largest employer South of San Antonio, Texas. Again, I believe BISD is discriminating based upon my race.

I am asking that the Texas Workforce Commission; Division of Civil Rights investigate this injustice based upon BISD refusing to hire based on the color of my skin.

On December 14, 2010, Alex sued BISD for not hiring him on account of his race.[3] In his live pleading,[4] Alex alleges that: (1) he was not hired as a health teacher in October 2009 on account of his race; (2) he was not hired for "other subsequent positions" for which he is qualified, including a position that was filled on or about October 18, 2011; and (3) BISD employs a disproportionately low number of African American persons.[5] Alex pleads in his petition that he is not asserting a federal cause of action.

BISD filed a plea to the jurisdiction by which it argued the trial court lacked subject-matter jurisdiction over all of Alex's claims except for his claim that he was not

---

[3] Alex's Original and First Amended Petition each include a copy of the Texas Workforce Commission's "Dismissal and Notice of Right to File a Civil Action" document, dated October 25, 2010. Without stating the result of any investigation, it states that the file on Alex's complaint was being closed.

[4] Alex's live pleading is his First Amended Original Petition filed on October 27, 2011.

[5] Twice at oral argument before this Court, Alex conceded he is not making a retaliation claim in this lawsuit. *See e.g.*, *Tex. Dep't of Transp. v. Esters*, 343 S.W.3d 226, 230–31 (Tex. App.—Houston 2011, no pet.) ("[U]nder both state and federal law, courts have held that a claim of retaliation for filing a charge of discrimination is sufficiently related to the charge of discrimination to exhaust remedies for the retaliation claim, even though the charge contains no reference to any alleged retaliation").

hired in October 2009 for the Early College High School position on account of his race. BISD argued that the trial court lacked subject-matter jurisdiction over Alex's other claims because they were not included in Alex's complaint filed with the Commission. After a hearing, the trial court denied BISD's plea to the jurisdiction in its entirety. BISD timely filed this interlocutory appeal.

## II. STANDARD OF REVIEW

To render a binding judgment, a court must have both subject-matter jurisdiction over the controversy and personal jurisdiction over the parties. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010). A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Cameron County, Tex. v. Ortega*, 291 S.W.3d 495, 497 (Tex. App.—Corpus Christi 2009, no pet.). Subject- matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *See Miranda*, 133 S.W.3d at 228; *Ortega*, 291 S.W.3d at 497.

## III. ANALYSIS

**A. Did Alex fail to exhaust his administrative remedies for alleged failure-to-hire claims arising after October 2009 by not including these claims in his pre-suit complaint filed with the Commission?**

By its first issue, BISD argues that Alex failed to exhaust his administrative remedies for any position for which he was not hired after "early October 2009" (the date

4

of non-hire that Alex alleged in his complaint) because his pre-suit complaint did not identify with specificity any other position for which he was not hired on account of his race. BISD argues that "failure to hire" is a discrete act and that Alex was required to identify, in his complaint, specific positions for which he was not hired and the date(s) of BISD's alleged unlawful employment actions. Alex argues that: (1) his complaint was broad enough to include BISD's alleged failure to hire him for a coach position at Faulk Middle School in October 2011; (2) his suit concerns a continuing course of conduct and therefore he was not required to file an additional or more detailed complaint with the Commission; and (3) because efforts at conciliation were futile based upon BISD's continuing refusal to hire him, he was not required to file a more specific complaint. We disagree with Alex.

### *(1)   Legal Standard for Exhaustion of Administrative Remedies*

Failure to timely file an administrative complaint under section 21.201 of the Texas Labor Code deprives a court of subject-matter jurisdiction over discrimination claims. TEX. LAB. CODE ANN. § 21.201 (West 2006); *see also Tex. Dep't of Transp. v. Esters*, 343 S.W.3d 226, 231 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Lueck v. State*, 325 S.W.3d 752, 757–65 (Tex. App.—Austin 2010, pet. denied)); *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied) ("To attach jurisdiction, [plaintiff] must have filed a complaint with the [Commission] or the United States Equal Employment Opportunity Commission ["EEOC"] within 180 days of the alleged discriminatory employment practice"). In pertinent part, section 21.201 provides the following:

(a)    A person claiming to be aggrieved by an unlawful employment practice or the person's agent may file a complaint with the [C]ommission.

(b)    The complaint must be in writing and made under oath.

(c)    The complaint must state:

   (1)    that an unlawful employment practice has been committed;

   (2)    the facts on which the complaint is based, *including the date, place, and circumstances of the alleged unlawful employment practice* . . . .

TEX. LAB. CODE ANN. § 21.201(a)–(c) (emphasis added).   A primary purpose of filing the complaint with the Commission is to trigger an agency investigation so that voluntary compliance with the law is achieved through a conciliatory process.   *See Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006).[6]   The crucial element of a complaint filed with the Commission is the factual statement which must adequately put an employer on notice of the existence and nature of the discrimination charges being made.   *Bartosh*, 259 S.W.3d at 321.   The scope of a subsequent lawsuit is limited to the scope of the investigation that can reasonably be expected to grow out of the discrimination charge in the complaint.   *Id.* at 322.   We construe the complaint liberally to reach its substance, but we will not construe it to include facts that were initially omitted.   *See id.*

Under this standard, Alex's claims in this suit may include any claims stated in his complaint and factually related claims that could reasonably be expected to grow out of the Commission's investigation of the claims stated in the complaint.   *See id.*   The issue is whether the factual allegations in Alex's complaint, when liberally construed, could

---

[6]   We may consider federal precedent in this area to the extent it is analogous to section 21.201 of the Texas Labor Code. *See, e.g., Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 509 (Tex. 2012); *Johnson v. Hoechst Celenese Corp.*, 127 S.W.3d 875, 878–79 (Tex. App.—Corpus Christi 2004, no pet.).

6

reasonably give rise to an investigation of alleged discriminatory failure to hire for specific positions after October 2009, including a position filled in October 2011. *See id.* The issue is not whether Alex, as the complaining party, believed efforts at conciliation were futile; thus, Alex's reliance on *Weise v. Syracuse University* to argue futility is misplaced. *See* 522 F.2d 397, 412 (2nd Cir. 1975).

The plain language of section 21.201 requires a litigant to give the date, place and circumstances of the alleged unlawful employment practice.[7] TEX. LAB. CODE ANN. § 21.201(c). Failure to hire is a discrete act that, when motivated by unlawful discriminatory intent, is a separate actionable practice. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004) (citing *Nat.'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *see also Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 509 (Tex. 2012) (explaining "[t]he discriminatory employment decision is the [unlawful] practice made with discriminatory intent," and that the later fruition of the unlawful decision is not actionable). Failure to hire is not subject to a continuing-violation standard. *See Pegram*, 361 F.3d 280.

In *Geldon v. South Milwaukee School District*, Lu Ann Geldon, a building service worker, applied for positions as an assistant custodian and long-term substitute custodian in the South Milwaukee School District. 414 F.3d 817, 818 (7th Cir. 2005). After she was not hired for either position, she filed a charge with the EEOC alleging sex discrimination. *Id.* However, in her charge, Geldon only mentioned the School District's

---

[7] We rely on the plain meaning of the statutory text as expressing legislative intent, unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).

failure to promote her to the assistant-custodian position. *Id.* Geldon later sued, asserting claims related to the school district's failure to promote her to both positions. *Id.* at 819. The appellate court concluded that Geldon's claim regarding the substitute-custodian position was beyond the scope of her EEOC charge and could not be included in her lawsuit. 414 F.3d at 820. The court explained:

> Geldon filed her charge complaining solely about the assistant . . . custodian position, even though she had also recently been denied the substitute custodian job. As a result, someone looking at the charge who knew that she had also sought the substitute custodian position likely would have inferred that Geldon did not mention the substitute custodian position because she did not think the decision not to hire her for that position was motivated by her gender. Therefore, the EEOC and School District were not put on proper notice with respect to Geldon's complaint about the substitute custodian position, and the district court did not err.

*Id.*

### (2)  *Alex's Complaint Alleged Failure to Hire in October 2009*

As in *Geldon*, the pertinent portion of Alex's complaint references a failure to hire for a single position in October 2009; it does not reference a failure to hire for any other specific position:

> I believe that I am being discriminated against under Chapter 21, et.*seq.* since BISD refused to hire me, although, I was the best qualified candidate that applied for the position at the Early College High School with BISD and was not selected in early October 2009. Incredibly, BISD has on file an updated application in its Human Resources Department dated January 27, 2010 and [I] have received no contact as to any positions for interview, although BISD is the largest employer South of San Antonio, Texas. Again, I believe BISD is discriminating based upon my race.

Except for the alleged October 2009 failure to hire, Alex did not give the date, place and circumstances of any other alleged unlawful employment practice. *See* TEX. LAB. CODE ANN. § 21.201(c). While Alex mentioned an updated employment application dated

8

January 27, 2010, he did not complain that he was not hired for a specific position after October 2009 based on racial discrimination. Nor did Alex state the date he submitted his updated application or whether he had applied for specific positions in conjunction with submitting his updated application.

It is undisputed that BISD is a large employer with at least 8,000 employees. It is also undisputed that when there is a job opening for a teaching position, applications are prescreened to confirm the applicant's basic qualifications and then it is up to individual principals at numerous schools within the district to offer a particular applicant an interview for a given position. As in *Geldon*, someone reading Alex's complaint could not reasonably be expected to discern and investigate specific positions for which Alex applied and was not hired after October 2009. The language of Alex's complaint leaves open the possibility he did not apply for any specific positions after October 2009. The complaint cannot reasonably be expected to have triggered investigation of non-hire for a position in October 2011, more than eighteen months *after* Alex filed his complaint.

As a matter of law, we conclude that Alex failed to exhaust his administrative remedies for his alleged claims in this lawsuit that arose after his alleged non-hire for the Early College High School position in October 2009. *See Geldon*, 414 F.3d 820; *see also Bartosh*, 259 S.W.3d at 327 (concluding hostile-work environment claim was barred by failure to timely include complaints of specific unlawful acts in pre-suit complaint filed with the Commission); *County of Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *6 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (concluding former employee failed to exhaust remedies for sex-discrimination claims

9

omitted from pre-suit complaint).   As a result, the trial court lacked subject-matter jurisdiction over those claims.   *See Esters*, 343 S.W.3d at 233; *Bartosh*, 259 S.W.3d at 327; *see also Manion*, 2012 WL 1839399, at *6.   We sustain BISD's first issue on appeal.

**B.     Did Alex fail to exhaust his administrative remedies for a disparate-impact claim by omitting the claim from his pre-suit complaint filed with the Commission?**

By its second issue, BISD argues that to the extent Alex pleads a disparate-impact racial discrimination complaint in his live pleading, that claim is barred because it was not included in his pre-suit complaint filed with the Commission.[8]   Alex appears to argue his complaint was broad enough to encompass his disparate-impact claim.   Having made an independent review of the record and the applicable law, we agree with BISD.

A disparate-impact claim is substantially different than a disparate-treatment claim.   *Pacheco*, 448 F.3d at 787.   As a result, each type of claim must first be exhausted in the underlying administrative complaint.   *See id.* at 791–92.   A plaintiff is required to allege the following elements in a pre-suit administrative complaint to proceed with a disparate-impact claim:   (1) an employer's facially neutral employment policy; (2) that, in fact, has a disproportionately adverse effect on a protected class.   *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 811 (Tex. App.—Austin 2009, no pet.) (citing

---

[8]     Although BISD failed to challenge the trial court's subject-matter jurisdiction over Alex's disparate-impact claim in the trial court, it may raise this issue for the first time on appeal.   *See Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 531 (Tex. 2012) (holding school district could raise challenge implicating lack of subject-matter jurisdiction for the first time on appeal though preferred practice is to raise the issue at the earliest opportunity); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012) (holding subject-matter jurisdiction can be challenged for first time on interlocutory appeal); *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (holding ripeness and standing components of subject-matter jurisdiction could be raised for first time in interlocutory appeal concerning whether plaintiffs exhausted their administrative remedies prior to filing suit).

*Pacheco*, 448 F.3d at 791). By contrast, a disparate-treatment claim requires proof of a racially discriminatory motive in the refusal to hire a particular person. *See id.* at 804 n.1.

In *Pacheco*, the plaintiff's underlying administrative charge facially alleged only a disparate-treatment claim, failed to mention any neutral employment policy, and complained only of specific instances of past discriminatory treatment of the plaintiff. 448 F.3d at 791–92. As a result, the appellate court held that the plaintiff failed to raise any disparate-impact claim in his EEOC charge and it dismissed those claims. *Id.* at 792.

To the extent Alex seeks to raise a disparate-impact claim in his live pleading, as in *Pacheco*, such a claim is barred because in his pre-suit complaint filed with the Commission Alex failed to allege any disparate-impact claim, failed to mention any neutral employment policy, and complained only of his personal discriminatory treatment. As a result, the trial court lacks subject-matter jurisdiction over the disparate-impact claim alleged in Alex's live pleading. *See id.*; *Poindexter*, 306 S.W.3d at 812. We sustain BISD's second issue.

## IV. CONCLUSION

We conclude the trial court lacks jurisdiction over all of Alex's claims asserted in his live pleading except for his disparate-treatment racial discrimination claim that allegedly arose in October 2009 and which was set forth in his complaint. Accordingly, we reverse the trial court's order denying BISD's plea to the jurisdiction and render judgment dismissing all of Alex's claims with prejudice, except for Alex's disparate-treatment racial discrimination claim that allegedly arose in October 2009. *See* TEX. R. APP. P. 43.2(c);

11

*Hidalgo County v. Dyer*, 358 S.W.3d 698, 711 (Tex. App.—Corpus Christi 2011, no pet.);

*see also Manion*, 2012 WL 1839399, at *9.


                                              GREGORY T. PERKES
                                              Justice

Delivered and filed the
8th day of August, 2013.